UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No. 97-1037

UNITED STATES OF AMERICA,     *
         *
     Appellee         *
         *
     v.         *
         *     Appeal from the United
SI QUOC TRAN,     *     States District Court for
         *     the Western
District of
     Appellant.     *     Missouri
         *

Submitted:  May 20, 1997

Filed: September 4, 1997

Before BEAM, FRIEDMAN*, and LOKEN, Circuit Judges.

FRIEDMAN, Circuit Judge.

In this appeal from his conviction of one count of conspiracy to traffic in counterfeit checks, the appellant Si Quoc Tran contends that: (1) the jury improperly considered his failure to testify; (2) the district court erroneously allowed the introduction of evidence of a meeting of the conspirators at which another conspirator was seriously injured and at which Tran was present; and (3) the district court improperly enhanced his sentence because he was a supervisor or manager of the conspiracy. We affirm.

---

* DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

I

A jury in the United States District Court for the Western District of Missouri convicted Tran of conspiring to pass and cash counterfeit checks, in violation of 18 U.S.C. §§ 371 and 513. The district court** sentenced Tran to fifty-seven months imprisonment.

Viewing the evidence most favorably to the government, see United States v. Street, 66 F.3d 969, 972 (8th Cir. 1995), the jury could have found the following facts:

The conspiracy involved the passing and cashing of counterfeit checks drawn on various business bank accounts. It operated from August through November, 1994, and grossed almost $90,000. The leader of the conspiracy was Hai Ngoc Nguyen, who came to Kansas City, Missouri in 1994.

The conspiracy had persons known as "passers," who cashed the checks, and those known as "drivers," who drove the "passers" to the places where they did the cashing. Its modus operandi was as follows: In the morning, Nguyen distributed to the "drivers" the counterfeit checks, payable to the "passers." The "drivers" drove the "passers" to banks in the Kansas City and St. Louis areas, where they gave the checks to the "passers," who cashed them. The "passers" turned over the money they received to the "drivers," who gave the money to Nguyen. The "passers" usually cashed several counterfeit checks in a day. Later in the day, the "passers" returned to Nguyen's apartment, where they received fifteen percent of the proceeds. Nguyen paid the "drivers" five percent of the amounts received.

When Nguyen came to Kansas City, Tran arranged for him to rent a small apartment located below his parents' store. Tran recruited three "passers," and

---

** The Honorable H. Dean Whipple, United States District Judge for the Western District of Missouri.

attempted to recruit a fourth.  Tran frequently was present in Nguyen's apartment when Nguyen distributed the counterfeit checks in the morning and paid the "passers" at the end of the day.

Following the verdict, Tran moved for a new trial and for an evidentiary hearing to determine whether the jurors improperly considered his failure to testify.  The court denied both motions.

## II

Tran did not testify.  The district court instructed the jury (Instruction No. 17):  "There is no burden of proof on a defendant to prove that he is innocent.  Accordingly, the fact that the defendant did not testify must not be considered by you in any way, or even discussed, in arriving at your verdict."

During its deliberations the jury sent a note to the court that included the question whether it was "entitled to know why the defendant did not take the witness stand."  The court answered "no" and told the jury to look at Instruction No. 17.

In his motion seeking an evidentiary hearing on alleged jury misconduct, Tran presented affidavits from two of the jurors.  One affidavit stated:  "The fact that Mr. Tran did not testify was discussed by the jury during our deliberations" and "was one of the major arguments used by some of the jurors to convince the undecided jurors to vote to find Mr. Tran guilty."  The other affidavit stated:  "During the jury's deliberations, the fact that Mr. Tran did not testify was discussed by at least four members of the jury."  Tran's motion requested an evidentiary hearing on "the allegation of jury misconduct."  He sought the hearing under the exception to Rule 606(b) of the Federal Rules of Evidence, which provides:

> a juror may not testify as to any matter or statement occurring
> during the course of the jury's deliberations . . . except that a juror
> may testify on the question whether extraneous prejudicial
> information was improperly brought to the jury's attention or
> whether any outside influence was

3

improperly brought to bear upon any juror.

In denying the motion, the district court ruled that Rule 606(b) barred the use of the jurors' affidavits to impeach their verdict because their allegation that the jury had considered Tran's failure to testify did not come within the Rule's exception for "extraneous prejudicial information." The court stated: "There is no admissible evidence that the jury premised their verdict on Defendant's failure to testify."**[Op. 7]**

In this court Tran again argues that the statements in the affidavits came within the "extraneous prejudicial information" exception to the bar in Rule 606(b) on a juror's testifying about what occurred during the jury's deliberations and that he was therefore entitled to an evidentiary hearing on the issue. This court's recent decision in United States v. Rodriquez, 116 F.3d 1225 (8th Cir. 1997), rendered after the decision of the district court, is dispositive of the issue and requires rejection of Tran's contention.

In Rodriquez, the defendant sought a new trial and an evidentiary hearing based on the statement by his lawyer's secretary that "at least one juror" had told her after the trial that "Rodriquez's failure to testify was discussed during deliberations." Id. at 1226. This court rejected Rodriquez's argument that "since his failure to testify was not evidence and should not have been considered, it should be considered an `outside influence' about which the jurors should be allowed to testify." Id. at 1226-27. In language equally applicable to the present case, the court explained:

> That Rodriquez did not testify is not a fact the jurors learned
> through outside contact, communication, or publicity. It did not
> enter the jury room through an external, prohibited route. It was
> part of the trial, and was part of the information each juror
> collected. It should not have been discussed by the jury, and
> indeed was the subject of a jury instruction to that effect. But it
> was not "extraneous [prejudicial] information," and therefore does
> not fall within the exception outlined in Rule 606(b). Accordingly,
> members of the jury are prohibited by Rule

4

606(b) from testifying about their deliberations or impeaching their
verdict.

Id. at 1227 (footnote omitted).

In the present case, Tran's failure to testify also was not "extraneous prejudicial information" because it was known to the jurors as a result of their presence at the trial, not as a result of something disclosed to them that had not occurred in the courtroom. The present case, therefore, is unlike United States v. Swinton, 75 F.3d 374 (8th Cir. 1996), upon which Tran relies, because there a juror had stated during jury deliberations that the defendant had a prior conviction -- a fact that, although correct, had not been brought out at the trial. As this court stated in Rodriquez, citing Swinton, "A prior conviction of a defendant, for example, when not admitted as evidence at trial, but which nonetheless entered into the jury's deliberations through personal knowledge of a juror, has been held to be `extraneous prejudicial information.'" Rodriquez, 116 F.3d at 1227. Here, as in Rodriquez, "[t]he district court did not err in denying [Tran] a new trial or an evidentiary hearing." Id.

III

At the trial, one of the conspirators testified about a meeting of conspirators at Nguyen's apartment, at which the witness and another conspirator tried to withdraw from the venture. Nguyen refused to allow them to do so, beat both of them and, when the witness persisted in his request, seriously injured him by cutting him with a knife. According to the witness, Tran was present during his beating by Nguyen, but "didn't do anything. He just stand there and look." Prior to trial, the court had denied Tran's motion in limine to exclude evidence of this incident because the evidence was admissible as an overt act in furtherance of the conspiracy and its "probative value was not substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Tran contends that the evidence of the beating was improperly admitted as other crimes evidence under Rule 404(b) of the Federal Rules of Evidence.

"This court has consistently held that `[e]vidence that is probative of the crime

charged and not relevant solely to uncharged crimes is not "other crimes" evidence.'" United States v. Aranda, 963 F.2d 211, 213-14 (8th Cir. 1992) (quoting United States v. Cerone, 830 F.2d 938, 948 (8th Cir. 1987), cert. denied, 486 U.S. 1006 (1988)).  Here, Tran was charged with conspiracy to traffic in counterfeit business checks.  Nguyen beat the witness in retaliation for his attempt to withdraw from that conspiracy, in front of other conspirators, including Tran.  The testimony showed Nguyen's determination to keep the conspiracy going and the punishment a conspirator who attempted to withdraw would receive.  "Where the government has introduced evidence of acts committed by the defendant or a co-conspirator, during the time frame of the conspiracy and in furtherance of it, this Court has held that such evidence is not of `other crimes,' but rather is evidence of the very crime charged." Id. at 214 (citations omitted).

Tran argues that even if the evidence was admissible, its prejudicial nature  substantially outweighed its probative value.  "Such balancing is peculiarly within the discretion of the district court and should not be disturbed absent a clear showing of abuse."  United States v. Adediran, 26 F.3d 61, 64 (8th Cir. 1994).  The probative value of the evidence outweighed any possible prejudicial effects of the testimony that Tran did nothing to prevent the beating.

IV

In determining Tran's sentence, the district court increased his offense level by three to reflect Tran's role as "a manager or supervisor (but not an organizer or leader) [in a] criminal activity involv[ing] five or more participants." U.S. Sentencing Guidelines Manual § 3B1.1(b) (1995).  "`We will reverse the determination of a defendant's role in a criminal activity only if it is clearly erroneous.'"  United States v. Rodamaker, 56 F.3d 898, 902 (8th Cir. 1995) (quoting United States v. Cotton, 22 F.3d 182, 186 (8th Cir. 1994)).  Here, the court did not clearly err.

As the district court justifiably concluded, "this man was one of the ring leaders in this conspiracy."  Tran recruited three "passers," tried to recruit another, and

recruited one "driver."  The district court also noted that Tran "never appeared at any bank to cash any checks, but he was always around, and he was always present in that house."

Tran contends that the fact that his share of the conspiracy proceeds was only five percent -- the same as that of the "drivers" and substantially less than the fifteen percent the "passers" received -- is inconsistent with the district court's finding that he was a manager or supervisor.  The mere mathematical percentage of Tran's share, however, may not be a proper measure of his compensation.  This is because the record suggests that he may have received five percent of the proceeds generated by each of the persons he had recruited, whereas the "passers" and "drivers" received a percentage of only the counterfeit checks they cashed or helped to cash.  In any event, his allegedly low share of the proceeds does not outweigh the other evidence in the record supporting the district court's finding that he was a manager or supervisor or establish that the finding is clearly erroneous.

CONCLUSION

Tran's conviction and sentence are affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

7